UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEARLINE MARTIN                    :

     Plaintiff                    :

     v.                           :     Civil Action No. 05-1593 (RCL)

UNITED STATES OF AMERICA           :

     Defendant

## JOINT PRETRIAL STATEMENT

## I. STATEMENT OF THE CASE

The case was brought under the Federal Tort Claims Act. Plaintiff was employed by Goodwill Industries as an elevator operator at the Bureau of Engraving and Printing. The Plaintiff alleges that on October 9, 2001 elevator number ten, which the Plaintiff was operating, malfunctioned and began to jerk up and down causing the Plaintiff to fall and sustain injuries which Plaintiff claims have left her permanently disabled. The elevators are owned and maintained by the Defendant.

## II. PLAINTIFF'S CLAIMS

A. Defendant was negligent in failing to properly inspect, maintain and repair the elevator which injured the Plaintiff.

B. The elevator malfunction was caused by a Defendant employee negligently damaging the elevator with a forklift and then

negligently failing to notify the proper personnel.

C. Defendant, through its employees, including but not limited to Art Fernandez, was negligent in failing to respond when notified that elevator ten was malfunctioning on the morning of October 9, 2001 prior to the incident involving the Plaintiff.

D. Defendant was negligent in allowing an unsafe elevator to continue in operation.

E. Defendant had actual and constructive knowledge that the elevator was unsafe.

F. The Defendant was negligent in allowing the continued use of old elevators which were in a constant state of dangerous disrepair.

G. As a result of the Defendant's negligence, Plaintiff sustained permanent injuries to her knees and shoulder.

H. As a result of her injuries Plaintiff's employer has not allowed her to resume he job and she is now permanently disabled and unemployable.

I. In addition to her employment disability, Plaintiff has suffered physical and mental pain, is no longer able to engage in many of her previous activities, and suffered detriment to her quality of life.

## III. DEFENDANT'S CLAIMS

A. The Defendant denies that it failed to properly inspect, maintain, and repair elevator number 10.

B. The Defendant denies that it had knowledge of or was advised that elevator 10 was damaged with a forklift or that an employee of the Defendant failed to notify proper personnel.  Any alleged failure to notify appropriate agency personnel concerning any alleged damage to elevator number 10 was on the part of the employees of Goodwill Industries, including the Plaintiff. The elevator operators employed by Goodwill Industries are responsible for notifying the electric shop of any damage to or malfunction of the elevators.

C. The Defendant denies that anyone notified its employees that elevator number 10 was not functioning on the morning of October 9, 2001.

D. There is no evidence that elevator number 10 was allegedly unsafe either before or after the alleged incident.

E. The Defendant denies that it had actual or constructive knowledge that elevator 10 was allegedly unsafe.

F. The Defendant denies that it is possible for the incident to have occurred as alleged by the Plaintiff.

G. Elevator 10 was not in the exclusive control of the

-3-

Defendant at the time of the incident alleged. Elevator 10 is a manually operated elevator. The Plaintiff was manually operating the elevator at the time of the incident.

H. The Plaintiff, an extremely obese female with a long-term history of arthritis in the knees, was manually operating the elevator on the morning of October 9, 2001 at the time of the incident. The elevator controls were exclusively in the control of the Plaintiff. The Plaintiff caused or contributed to the accident which bars her recovery.

I. The Defendant denies that Plaintiff sustained permanent injuries as a result of her fall. The Defendant denies that Plaintiff's fall permanently disabled Plaintiff or that she became permanently unemployable as a result of the alleged incident.

J. The Defendant denies that any of its agents or employees were negligent and denies that the injuries resulted from the negligence of the Defendant. The Defendant denies that the doctrine of res ipsa loquitor applies.

## IV. WITNESSES

### A. PLAINTIFF'S WITNESSES

1. Pearline Martin
   4430 South Dakota Avenue, N.E.
   Washington, D.C. 20017
   Testimony: the incident and her injuries. Estimate: 45
    minutes on direct.

-4-

2. *Theresa O. Berry, M.D.
   24 Florida Avenue, N.E.
   Washington, D.C.  20002
   Testimony: treatment of Plaintiff and her injuries.
   Permanence and causation. Estimate: 30 minutes on direct.

3. Fontella Williams
   4212 Barker Lane, S.E.
   Washington, D.C. 20019
   Testimony: the incident, notice to Defendant, condition
    of elevators, Plaintiff's condition. Estimate: 20
   minutes on direct.

4. Anita Godley
   4611 HillSide road, S.E.
   Washington, D.C. 20019
   Testimony: the incident, notice to Defendant, condition
    of elevators, Plaintiff's condition. Estimate: 20
    minutes on direct.

5. James Long
   c/o Charles F. Walters, Esquire
   Seyfarth Shaw, LLP
   815 Connecticut Avenue, N.W., Suite 500
   Washington, D.C. 20006-4004
   Testimony: Employment of Plaintiff. Plaintiff's
    disability to work. Estimate: 20 minutes on direct.

6. Mary Ashton (if available)
   4012 Cole Boulevard, S.E.
   Washington, D.C. 20032
   Testimony: the incident, notice to Defendant, condition
    of elevator, Plaintiff's condition. Estimate: 20 minutes
    on direct.

7. Jamie Windell (only if necessary)
   P.O. Box 25250
   Lehigh Valley, PA 18002
   Testimony: Workers Compensation lien and related
    documents. Estimate: 5 minutes on direct.

8. Derry Martin
   4430 South Dakota Avenue, N.E.
   Washington, D.C. 20017
   Testimony: Plaintiff's injuries Estimate: 20 minutes on

direct.

9. Richard Popp
   c/o Counsel for Defendant
   Testimony: Defendants documents and practices; employees
   and employment practices;  Condition of elevators.
   30(b)(6) witness. Estimate: 30 minutes on direct.
   Plaintiff requests to examine Mr. Popp as an adverse
   witness both as a fact witness and a 30(b)(6) witness.
   Estimate: 20 minutes on direct.

10. Custodian of Records for Goodwill (if necessary)
    Testimony: Goodwill Records. Estimate: 5 minutes on
    direct.

11. Gail Serenco (if necessary)
    Testimony: Records produced. Estimate: 20 minutes on
    direct.

12. Custodian of Records for the Defendant as to documents
    received (by subpoena or otherwise) from Goodwill in
    this case. (If necessary) Testimony: Records. Estimate:
    5 minutes on direct.

**B.  DEFENDANT'S WITNESSES**

The Defendant Intends to Call:

1. Rick Popp - Facilities Maintenance Manager; Office of
   Facilities Support; Bureau of Engraving and Printing;
   14th and C Street, S.W.; Room 212-17A; Washington D.C.;
   2022; phone number 874-2164.  Mr. Popp manages the
   Electric Shop and is familiar with the maintenance of the
   Bureau elevators.  Mr. Popp will testify regarding the
   following: overall elevator repair and maintenance;
   general elevator function; renovation of elevators;
   Bureau procedure and practice of daily elevator reports
   to the Electric Shop supervisor; procedure for informing
   elevator mechanics of elevator malfunctions; and
   extensive water damage to the Electric Shop where the
   elevator maintenance log books were stored.

2. Larry Thomasson - Engineering Contract Coordinator,
   Division of Facilities Engineering; 14th and C Streets,
   S.W.; Room 310-A; Washington D.C.; phone number

(202)874-0033.  Mr. Thomasson was proffered as a 30(b)(6) witness for technical matters.  Between 1990 and 2002, Mr. Thomasson worked in the Electric Shop as an Electrician and one of his primary responsibilities was elevator maintenance and repair.  Mr. Thomasson will testify regarding, but not limited to, the following: elevator repair and maintenance; electricians' practice and procedure of responding to calls regarding elevator damage or malfunction; mechanics of elevator operation; maintenance of elevator log books; electricians' practice of daily entries in elevator log books.  Mr. Thomasson, who worked the day shift at the time in question, will testify that he was not notified of Plaintiff's accident. He will further testify that elevator 10 cannot move unless the doors are fully closed and the safety limits are made up.  Moreover, the elevator doors cannot close if they have been knocked out of their tracks by forklift equipment, and the elevator does not move until the operator engages the lever.  From Plaintiff's description of the incident, it appears that she released the lever before the elevator cleared the leveling zone of the elevator and/or that she inadvertently hit the emergency button on the panel.

3. Michael Lovejoy – Electrician, Office of Facilities Support; 14th and C Streets, S.W.; Room 212-17A; Washington D.C.; phone number 874-3059.  Mr. Lovejoy worked on elevator maintenance during the period in question.  He will testify regarding, but not limited to, the following: elevator repair and maintenance; injuries and accidents on elevators; electricians practice and procedure of responding to calls regarding elevator damage or malfunction; mechanics of elevator operation; maintenance of elevator log books; and Bureau electricians' practice of daily entries in elevator log books.  Mr. Lovejoy, who worked the day shift during the time in question, will testify that he was not notified of plaintiff's accident.  Mr. Lovejoy will testify that the elevator cannot move on a manual freight elevator if the doors are not properly closed and latched, or if the doors are knocked off track.  Mr. Lovejoy will also testify that elevator #10 was manually operated; thus, the elevator operator must move the manual lever up or down in order for the elevator to move.  Finally, he will testify that the freight elevators have a counterweight

that is substantially heavier than capacity than car
rated capacity; thus, if there was a malfunction the
elevator would move upward, not jolt downward.

4. *Dr. John Parkerson - Board certified Occupational
   Medicine Doctor; 4717 Falls Road; Baltimore, MD; 21209;
   telephone number (410)366-3627. Dr. Parkerson examined
   Plaintiff on March 20, 2002. He will testify regarding
   his evaluation and medical observations of Plaintiff. He
   will testify that Plaintiff suffered no permanent injury
   as a result of the incident on October 9, 2001, and that
   her present condition is a result of her pre-existing
   condition.

5. *Dr. John Delahay - Board certified Orthopedic Surgeon at
   Georgetown University Hospital; Department of
   Orthopedics; 3800 Reservoir Rd., N.W., G-PHC; Washington
   D.C.; 20007. Dr. Delaney examined Plaintiff on November
   27, 2006. He will testify regarding his examination and
   medical observations of Plaintiff. Dr. Delahay will
   testify that Plaintiff's present condition is not related
   to the injuries she sustained on October 9, 2001.

6. Thomas Miles - Investigator, Office of Security, Bureau
   of Engraving and Printing14th and C Streets, S.W.; Room
   212-17A; Washington D.C.; phone number (202)874-2946.
   Mr. Miles will testify concerning his surveillance of
   Plaintiff in 2005 and 2006. The purpose of his testimony
   is to authenticate the pictures and video. In addition,
   if necessary, he will testify as to where he obtained the
   documents in Defendant's Attachment E to Defendant's
   discovery responses.

7. Roberto Naranjo - Safety Engineer; Office of Environment,
   Health and Safety; Bureau of Engraving and Printing14th
   and C Streets, S.W.; Washington D.C.; phone number (202)
   874-2406. Mr. Naranjo will testify that the Office of
   Environment, Health and Safety within the Bureau of
   Engraving and Printing does not maintain
   Accident/Incident/Near Miss Reports for contract
   employees.

8. The Defendant reserves the right to call any witness
   listed by Plaintiff.

### C. OBJECTIONS

1. Plaintiff objects to any witness testifying that the Plaintiff may have caused or contributed to the accident. Any such testimony is based entirely upon speculation.

2. Plaintiff objects to the testimony of Larry Thomasson, Michael Lovejoy, Thomas Miles, Joseph DiBisceglie unless a proffer is made establishing the relevance of their testimony.

3. Plaintiff objects to any witness speculating as to possible causes of the elevator that are not factually supported by sworn testimony.

4. Plaintiff does not object to <u>either</u>  Dr. John Parkerson <u>or</u> Dr. John Delahay testifying but objects to them <u>both</u> testifying. Both doctors are IME expert witnesses hired by the Defendant or a defending insurance company (in workers compensation case) with an eye towards testifying against the Plaintiff. Plaintiff submits that it is cumulative and improper to have more than one IME doctor testify. *Vallot v. Central Gulf Lines Inc.*, 641 F.2d 347 (5th Cir. 04/03/1981).

## V. EXHIBITS

### A.  PLAINTIFF'S EXHIBITS

1. "Bureau of Engraving & Printing Supervisor's Accident/

Incident/ Near Miss Report" re 10/9/01 incident. (Contained in Attachment E of documents provided by the Defendant).

2. Employer's First Report of Injury or Occupational Disease dated 10/9/01. (Contained in Attachment E of documents provided by the Defendant).

3. Incident Report Form re 10/9/01 incident. (Contained in Attachment E of documents provided by the Defendant).

4. Medical bills: See Damages Section VII below for list

5. Workers Compensation lien ($31,130.39)

6. Medical reports

a. Diversified Medical & Associates 10/10/01

b. Providence Hospital Radiology Report 10/9/01

c. Washington Hospital Center MRI Center 10/16/01

d. Workability Associates 10/22/01

e. Lawrence A. Manning 12/10/01

f. Theresa O. Berry 12/12/01

g. Accessible MRI left knee 1/17/02

h. Accessible MRI left knee 1/17/02

i. Lawrence A. Manning 1/28/02

j. Lawrence A. Manning 2/20/02

k. Lawrence A. Manning 4/8/02

l. Lawrence A. Manning 5/13/02

   m. Workability Associates 5/16/02

   n. Lawrence Manning 6/3/02 disability certificate

   o. Lawrence Manning 7/8/02 disability certificate

   p. Lawrence Manning 7/29/02 Authorization for Absence

   q. Health Advocacy Disability Certificate 7/29/02

   r. Health Advocacy Disability Certificate 9/1/02

   s. Health Advocacy Disability Certificate 10/1/02

   t. Health Advocacy Disability Certificate 3/6/03

   u. Health Advocacy 5/15/03

   v. Theresa O. Berry 6/2/03

   w. Theresa O. Berry 9/9/03

   x. Edward Rankin 6/3/04

7. Plaintiff's W-2 for 2001 ($21,703)

8. Employment records

   a. Incident Report Form (10/9/01)

   b. Employer's First Report of Injury or Occupational
      Disease (10/9/01)

   c. Employment Application (pp 1-3)(9/15/94)

   d. Employment Progress Report 12/15/00

   e. Time Study Form (9/30/98)

   f. Time Study Form (2/23/99)

   g. Time Study Form (9/1/99)

   h. Time Study Form (2/2/00)

    i. Time Study Form (3/19/01)

    j. Memorandum hourly wage increase (3/5/01)

    k. Personnel Separation Form 1/5/04

9. Incident (Injury/Illness) Investigation Form (Contained in Attachment C of documents provided by the Defendant) 9/24/01.

10. Personnel Separation Form 1/5/04

11. Mortality Table

**B.  DEFENDANT'S EXHIBITS**

1. Elevator Operation Handbook

2. Flood Emails

3. Pictures of the elevator

4. Pictures of the Plaintiff

5. Dr. John Delahay's IME dated 11/27/06

6. Dr. Delahay's Curriculum Vitae

7. Dr. John Parkerson's IME dated April 28, 2002

8. Dr. Parkserson's Curriculum Vitae

9. Investigators' Surveillance Notes

10. Diagram of elevator location

11. Dr. Theresa Berry's "to whom it may concern" letter dated September 5, 1997.

12. Dr. Perez' "to whom it may concern" letter dated April 12, 1994.

-12-

13. Worklife Expectancy Tables, Life and Worklife
    Expectancies, Hugh Richards, MS. Lawyers & Judges
    Publishing Co., Inc. 1999.

14. Bureau of Engraving and Printing Electric Shop
    Elevator/Electric Service Call Logs for the following
    time periods:

   a. 1999

   b. 8/18/99-8/14/00

   c. 8/15/00-12/6/01 (single sided copy)

   d. 8/15/00-12/6/01 (double sided copy)

   e. 12/7/01-10/22/02

   f. 10/23/02-7/16/04

   g. 1/2/03-4/17/03

   h. 9/2/03-8/30/04

**C. OBJECTIONS**

**PLAINTIFF'S OBJECTIONS**

1. Plaintiff objects flood emails that were not produced to
   Plaintiff's counsel until 4/17/07.

2. Plaintiff objects to pictures of any elevator that are
   not the elevator involved in this case.

3. Plaintiff objects to any photos or videos which were not
   produced to Plaintiff's counsel until on or after 4/16/07
   and not identified by date, time, location, and person

-13-

who took them.

4. Plaintiff objects to IME reports coming into evidence as they are not medical records but reports of expert witnesses hired by the Defendant or a defending insurance company. Plaintiff also objects on grounds of hearsay.

5. Plaintiff objects to curriculum vitae as hearsay.

6. Plaintiff objects to Investigators' Surveillance Notes which have not produced to the Plaintiff.

7. Plaintiff objects to the diagram of elevator location has not produced to the Plaintiff.

8. Plaintiff objects to Worklife Expectancy Tables, Life and Worklife Expectancies, Hugh Richards, MS. Lawyers & Judges Publishing Co., Inc. 1999 as they have not been provided to the Plaintiff and are not up to date and not generally accepted tables. Plaintiff also has suffered permanent injuries affecting her life separately from her ability to work.

9. Plaintiff objects Bureau of Engraving and Printing Electric Shop Elevator/Electric Service Call Logs as they are incomplete and unreliable records; some of which were not produced until April 16, 2007.

10. Plaintiff objects to any document that has not been specifically identified by page and date.

-14-

11. Plaintiff objects to any video not specifically
    identified by date and length of time.

12. Plaintiff objects to any document, photo or video not
    separately provided to Plaintiff's counsel prior to
    Pretrial with an index identifying pages and dates of
    documents and dates and length of time for videos since
    Defendant delivered hundreds of pages of documents,
    photos and films to Plaintiff's counsel on and after
    April 16 at 3:47 p.m. which had not been previously
    produced to Plaintiff's counsel. Many items produced by
    the Defendant have been mis-labeled.

**<u>DEFENDANT'S OBJECTIONS</u>**

As to each of the following documents, other than Exhibit
#1, Defendant agrees that the documents qualify as business
records and do not require a custodian of records to lay a
foundation. Defendant's objections are on other grounds as
stated below. Only as to Exhibit #1 (Bureau of Engraving &
Printing Supervisor's Accident/ Incident/ Near Miss Report)
does the Defendant contest its "business record"
admissibility.

1. Plaintiff's Exhibit #1 (Bureau of Engraving & Printing
   Supervisor's Accident/ Incident/ Near Miss Report).
   Objection.  The Defendant questions the authenticity of

the exhibit and it is hearsay.

2. Plaintiff's Exhibit #2 (Employer's First Report of Injury or Occupational Disease). Objection to the extent it purports to be an accurate description of the accident.

3. Plaintiff's Exhibit #3 (Incident Report Form). Objection to the extent it purports to be an accurate description of the accident.

4. Plaintiff's Exhibit #6f (Berry 12/12/01 medical report). Objection. Inadmissable hearsay.

5. Plaintiff's Exhibit #6g and h. (Accessible MRI reports) Objection.  Inadmissable hearsay.  Moreover, Dr. Manning, Dr. Parkerson, and Dr. Berry agree that there was no fracture.  They do not come within the 803(4) FRE exception.

6. Plaintiff's Exhibit #6i - l (Lawrence A. Manning reports). Objection to the extent that the exhibits are proffered for the purpose of showing that the accident was the cause rather than plaintiff's pre-existing condition.

7. Plaintiff's Exhibit #6n - p (Lawrence Manning disability certificates). Objection to the extent that the exhibits are proffered for the purpose of showing that the accident was the cause rather than plaintiff's

-16-

pre-existing condition.

8. Plaintiff's Exhibit #6q - t (Health Advocacy Disability Certificates). The Defendant objects to the extent they are proffered for the purpose of establishing that plaintiff's disability or condition on those dates was causally related to the accident.

9. Plaintiff's Exhibit #6v - w (Theresa O. Berry reports). Objection.  The exhibits are inadmissible hearsay.

10. Plaintiff's Exhibit #6x (Edward Rankin report). Objection to the extent that the exhibit is proffered for the purpose of showing that the accident was the cause rather than the plaintiff's pre-existing condition.

11. Plaintiff's Exhibit #8a - b (Incident Report Form and Employer's First Report of Injury or Occupational Disease. Objection to the extent it purports to be an accurate description of the accident.

12. Plaintiff's Exhibit #8c (Employment Application). The Defendant has no objection provided the entire application form is admitted.

13. Plaintiff's Exhibit #11.  The Defendant objects to the mortality tables to the extent they are proffered to establish a work-life expectancy or that they imply the

-17-

accident caused permanent injury or disability.

## VI. DEPOSITION TESTIMONY

The parties reserve the right to use the deposition of anyone deposed in this case if they are unavailable at trial. The Defendant reserves the right to use the deposition of the Plaintiff for all purposes.

## VII. DAMAGES

Plaintiff seeks damages for permanent injury including mental anguish and lost wages. Plaintiff was 59 years old at the time of the incident with a 23 year life expectancy (http://www.ssa.gov/OACT/STATS/table4c6.html). She was earning over $21,703 per year at the time of the accident and is no longer able to earn anything. Assuming Plaintiff retired at age 75 (16 years after the accident), this projects to $347,248 in lost salary. Plaintiff's medical bills are listed below:

```
a. 10/9/01 Metropolitan Radiology             76.00
b. 10/9/01 Napoli                             76.00
c. 10/9/01 Providence                        348.00
d. 10/11/01, 10/31/01 Berry                  180.00
e. 10/12/01 Diversified Medical              200.00
f. 10/16/01 Washington Hospital Center     2,384.00
g. 10/16/01 Washington Hospital Center       258.00
h. 10/16/01 Jelinek                          470.00
i. 10/16/01 Archer                            59.00
j. 10/16/01 Center Radiology                  22.75
k. 10/18/01 Manning                          180.00
l. 11/1/01 Quest Diagnostics                  37.50
m. 11/5/01 Manning                           435.00
n. 11/7/01 New Hampshire Pharmacy             75.00
o. 11/9/01 Manning                           115.00
```

-18-

```
p. 12/10/01 Manning                            855.00
q. 1/17/02 Accessible MRI Montgomery           880.00
r. 1/28/02 Scurry                              385.00
s. 1/28/02 Manning                             115.00
t. 2/20/02 Manning                             115.00
u. 3/20/02 Transcend                            56.00
v. 4/8/02 Manning                              425.00
w. 5/13/02 Pharmacy Management                 269.21
x. 5/13/02 Manning                              85.00
y. 6/10/02 Manning                              85.00
z. 7/8/02, 7/29/02 Manning                     895.00
aa. 12/9/02 Imaging Ass. of Buffalo             24.00
Total medical bills                          9,105.46
Lost wages (assuming retirement in 2012)   347,248.00
Total lost wages                           347,248.00
Total medical bills and lost wages         356,353.46
```

## VIII. STIPULATIONS:

### A. AGREED UPON:

1. The Defendant owns the building in which the October 9, 2001 incident which is the subject of this lawsuit occurred.

2. The Defendant was responsible for inspection, maintenance and repair of the elevators at the time of the incident.

3. The Plaintiff requested in discovery that all records concerning the repairs, maintenance and inspection of elevators in the Main Bureau of Engraving and Printing Building be produced by the Defendant. The Defendant produced day and midnight shifts from 1/6/99 through 12/10/99. (see binder for time period "1999"). The evening and midnight shifts were produced for the period

of August 18, 1999 through October 16, 2001, except for
one notation for the day shift dated August 19, 1999.
(see binders for time period 8/18/99-8/14/00; see also
8/15/00-12/6/01).  The log books from the day shift
covering the period  August 18, 1999 through October 16,
2001 were not produced.

4. Art Fernandez was an employee of the Defendant who duties
   involved maintenance and repair of the elevators.

5. The forklift operators at the Bureau of Engraving at the
   time of the incident were employees of the Defendant.

6. There is a workers' compensation lien in the amount of
   31,131.00 in this case.

7. The parties stipulate as to the authenticity of documents
   listed as exhibits except for Plaintiff's Exhibit No. 1
   to which Defendant does not stipulate.

8. The Defendant has agreed to produce Richard Popp as a
   witness for trial without subpoena. Mr. Popp will bring
   all records requested and/or produced during discovery
   and will testify as a 30(b)(6) witness concerning the
   matters addressed in discovery as a 30(b)(6) witness, in
   addition to a fact witness.

9. The documents produced by the Defendant contained no
   inspection records prior to 2004

10. The documents produced by the Defendant contained no "Incident (Injury Illness) Investigation Form" for the October 9, 2001 incident which is the subject of this lawsuit.

11. Two binders (one binder with two-sided entries and one binder with one sided entries) covering the period 8/15/00 - 12/6/01 were not provided to plaintiff's counsel until April 16, 2007.

12. Defendant agrees to make a good faith effort to provide Plaintiff's counsel, prior to pretrial, with an index of every photo and video being offered, which states the date and location the photo or video was taken, by whom it was taken and the length of the video (in minutes and seconds).

## IX. MOTIONS TO BE DECIDED

A. Defendant's motion in limine re: adverse inference for missing documents.

B. Plaintiff's motion in limine re exclusion of:

1. Any testimony of any witness asserting that Plaintiff caused or contributed to the accident since no such evidence or testimony has been provided to Plaintiff's counsel.

2. Any document not specifically identified by date and

produced with an index prior to pretrial.

3. Any document, photograph or video produced on or after
April 16, 2007.

**X.   ESTIMATE OF TRIAL TIME:**

The parties have differing estimates based upon what that
Court might rule regarding admissible testimony.

A. Plaintiff estimates one and a half to two days.

B. Defendant estimates three to four days.

**XI. LEGAL CITATIONS**

**A. PLAINTIFF'S CITATIONS**

1. In this case, elevator records produced by the Defendant
were missing from the critical period of time between
August 14, 2000 through December 6, 2001 (the accident
occurred on October 9, 2001). The Court, in its
discretion, may draw an adverse inference from the
missing records even in the absence of intentional
misconduct on the Defendant's part. *Williams v.
Washington Hospital Center*, 601 A.2d 28 (D.C. 1991);
*Glover v. Bic Corp.*, 6 F.3d 1318 (9th Cir. 1993); *Reilly
v. Natwest Markets Group*, 181 F.3d 253 (2d Cir. 1999).

2. Negligence can be established in an elevator malfunction
case by the existence of prior problems with that
elevator even if the malfunction which injured the

Plaintiff cannot be proved. *Mccoy V. Quadrangle Development Corporation*, 470 A.2d 1256 (D.C. 1983).

3. Negligence in the maintenance of an elevator may be inferred by the occurrence of an malfunction *Otis Elevator Company v. Henderson*, 514 A.2d 784 (D.C. 1986).

4. If the Defendant's negligence proximately caused the aggravation of the Plaintiff's prior injury or other health condition, then the Plaintiff is entitled to receive damages to the extent that the prior condition has been aggravated. *District of Columbia Standard Civil Jury Instruction* 13-7.

5. The duration of a Plaintiff's injured condition for years after an accident is evidence that the Plaintiff has suffered a permanent injury as a result of the accident. *McWilliams v. Lewis*, 125 F.2d 200 (D.C. Cir. 1941). *D.C. Standard Civil Jury Instruction* 13-2

**B. DEFENDANT'S CITATIONS**

1. An adverse inference is not appropriate in the instant case. There is no evidence of deliberate destruction of evidence or bad faith. On the contrary, the evidence discloses that prior to knowledge of Plaintiff's FTCA claim, a flood caused significant damage and destruction of records in the Electric Shop including the elevator

log books for the day shift prior to October 16, 2001.
*See McIntyre v. Peters*, 460 F.Supp.2d. 125, 138 (D.D.C.
2006) citing *Coleman v. Carey*, 1986 WL 11744 at *5
(D.D.C. June 1986) (quoting *Valentino v. United States
Postal Serv.*, 674 F.2d 56, 73 n. 31 (D.C. Cir. 1982);
*Friends for All Children, Inc. v. Lockheed Aircraft
Corp.*, 587 F.Supp. 180, 208-209 (D.D.C. 1984); See also
*Baltacchi v. Washington Hospital Center*, 581 A.2d 759
(D.C. 1990); *Thompson v. U.S. Dept. of Housing and Urban
Dev.*, 219 F.R.D. 93, 100-01 (D.Md 2003).  See Defendant's
Motion In Limine.

2.  The doctrine of res ipsa loquitor is not applicable in
the instant case because the operation of the elevator is
not in the exclusive control of the Defendant.  The
movement of the elevator is controlled in large part by
the elevator operator.  Thus, the Plaintiff may have
caused or contributed to the accident. See e.g.
*Washington Sheraton Corp. v. Keeten*, 407 A.2d 580,582
(D.C. 1979); *Otis Elevator Company v. Tuern*, 616 A.2d
1254, 1258 (D.C. 1992).

3.  In order to establish negligence, a Plaintiff must
establish the standard of case, that the defendant
breached the standard of case, and that there was a

causal relationship between the breach of that standard and the plaintiff's injuries. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1998). Contributory negligence on the part of the plaintiff bars recovery on a claim of negligence. *Martin v. George Hyman Constr. Co.*, 395 A.2d 63 (D.C. 1978).

4. The burden is on plaintiff to establish all elements of her damages by a preponderance of the evidence. The plaintiff must prove the damages claimed with reasonable certainty. *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982). The defendant is liable only for the damages proved to have been caused by his conduct. If the defendant is found to have caused only part of the plaintiff's damages, then the defendant is a liable for only that part. *Shomaker v. George Washington University*, 669 A.2d 1291, 1295-96 (D.C. 1995).

Respectfully submitted,

_____/s_____
Neil Intrater, Esq.
2310 Evans Drive
Silver Spring, MD 20902-4173
301-754-0378
Attorney for Plaintiff

\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205