IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
PEARLINE MARTIN,                  )
                                            )
         Plaintiff,              )
                                            )
v.                                          )      Civil Action No. 05-1593(RCL)
                                            )
UNITED STATES OF AMERICA  )
                                            )
         Defendant.            )
                                            )
_____)

**DEFENDANT'S MOTION IN LIMINE**
**TO PRECLUDE AN ADVERSE INFERENCE AT TRIAL**

      Plaintiff seeks an adverse inference at trial due to defendant's failure to produce certain records. Plaintiff is not entitled to an adverse inference at trial because there is no evidence of willful misconduct on the part of the defendant.

**Background**

      During the period of time in question, Plaintiff was employed with Goodwill Industries (Goodwill) as an elevator operator. Goodwill is an independent contractor with the Bureau of Engraving and Printing (BEP), which provides janitorial and elevator services. Plaintiff alleges that on October 9, 2001, she fell in freight elevator No. 10 due to an elevator malfunction, and sustained injuries. The defendant denies that plaintiff's fall was the result of any negligence.

      Plaintiff filed an administrative tort claim on September 9, 2003 which was received by the agency sometime after October 8, 2003[1] (Exhibit 1). Prior to this suit, the agency managers

---

[1] Plaintiff's counsel addressed the FTCA claim to the Department of Treasury at 1500 Pennsylvania Avenue, N.W. This document was then erroneously rerouted through the Financial

1

within BEP's facilities support office were contacted and requested to gather records concerning elevator maintenance, inspection and repairs information, including Dan Carver, Assistant Chief in the Office of Facilities Support, and Richard Popp, Facilities Maintenance Manager, Office of Facilities Support. During the time in question, Mr. Popp was the supervisor of the Electric Shop; thus, he was responsible for the general oversight of all maintenance and repair of BEP electrical facilities such as elevators (Popp Affidavit, ¶¶ 1-2). As the supervisor of the BEP elevator mechanics, Mr. Popp had knowledge of log books and maintenance records kept in the Electric Shop office. However, when Mr. Popp gathered the documents responsive to the inquiry, he realized that many of them had been destroyed by water damage from a flood in 2002. On Sunday, September 9, 2002, BEP personnel discovered that a chill water line to a fan coil on the sixth floor of the Bureau's annex building had burst, and water had been running through to the floors below over the weekend (Popp Affidavit, ¶ 3 and attachments). The water damage got progressively worse as it cascaded down through the floors. Although many offices were damaged by the flood, the Electric Shop suffered the most damage. The ceiling fan had fallen out, the carpet was ruined, computers and printers were damaged and the wooden bookshelves and drawers that lined the wall suffered severe and irreparable damage. Unfortunately, the bookshelf and drawers housed records pertaining to the elevators, including log books, and inspection records and these records suffered significant damage. Id. Every attempt was made to salvage the records maintained by the elevator shop, but many records were beyond repair and could not be salvaged. Id.

  On August 10, 2005, plaintiff filed suit and discovery was initiated by both parties.

---

Management Services, Department of Treasury, on October 8, 2003 to the Bureau of Engraving and Printing.

During the course of discovery plaintiff requested that defendant produce "all repair records or documents," "all inspection records or documents" and "all maintenance records or documents" for the elevators in the main building of BEP from January 1, 1995 through the present (Exhibit 2). In response to this request, the defendant began gathering responsive documents. Mr. Popp had previously turned over all available records as to Thomas Miles, an investigator for the Office of Security, BEP in March 2005.

In March 2005, Thomas Miles was asked by the General Counsel's Office to investigate an accident on an elevator on October 9, 2001. During the course of the investigation, he spoke with Richard Popp, the supervisor of the Electric Shop and requested all documents relating to elevator repair, maintenance and inspection. Mr. Popp provided Mr. Miles numerous log books which he took and locked in his office in the Office of Security (Miles Affidavit, ¶¶ 2-3).

In March of 2006, the agency submitted copies of the available log books to the U.S. Attorney's Office in response to plaintiff's request for production of documents. The available documents were for the following periods: 1999; 8/18/99-8/14/00; 8/15/00-12/6/01/; 12/7/01-10/22/02; 10/23/02-7/16/04; 1/2/03-4/17/03; and 9/2/03-8/30/04 (Miles Affidavit, ¶ 4).

Three copies of the available logs were made by Thomas Miles, Investigator, Office of Security, BEP and Gail Serenco, Agency Counsel assigned to this case. Id. Two copies were forwarded to Diane Sullivan, the Assistant U.S. Attorney assigned to the case, in several boxes. One copy was retained by agency counsel in her office. The originals remain in the Office of Security and are presently locked in the office of security evidence vault. The originals have not been removed from the office of security since they were copied in March 2006. Id.

After the boxes were delivered to the U.S. Attorney's Office, the AUSA removed the loose leaf binders containing copies of the log books from the boxes and placed them on an

empty desk immediately outside her office with instructions to her legal assistant to collate the loose leaf binders and deliver one set to Neil Intrater, plaintiff's counsel, and retain one set for her. The AUSA further instructed that her set be placed in a box, labeled, and sent to the file room on the third floor. It was not until August or September 2006 that the AUSA became aware that her copy of the available log books was either lost or misfiled. Throughout this period the AUSA and agency counsel were aware that relevant records and log books for the critical period of time were destroyed by the flood at BEP; thus, these documents were no longer available. Consequently, when plaintiff's counsel indicated that relevant records were missing for a period of time between 1999 and 2001, defendant's counsel believed that he was referencing specific log books that had been destroyed in the flood at BEP – such as the log book for the day shift during this time period.

     On April 13, 2006, the AUSA went to the agency and examined copies of the records in agency counsel's possession. Emails were sent to plaintiff's counsel to clarify which log books he had in his possession. During this email exchange, it was discovered that a copy of the log book covering the evening and midnight shift for the period August 15, 2000 to October 15, 2001 and the day and evening shift from October 16, 2001 to December 6, 2001 had not been forwarded to plaintiff's counsel by the U.S. Attorney's office. On April 16, 2007, the AUSA and agency counsel copied two log books covering that period maintained by agency counsel in the general counsel's office. One log book was double-sided and the other log book was single sided. They both covered evening and night shifts for the period August 15, 2000 to October 16, 2001, except for one notation for the day shift dated August 19, 2000. Beginning October 16, 2001 through December 6, 2001 the log books contain entries for the day and evening shift through December 6, 2001. The midnight shift was ended in mid-October. These log books

were hand-delivered to plaintiff's counsel on April 16, 2007.

**Argument**

**I.    An Adverse Inference Is Not Justified In This Case.**

In this jurisdiction, the destruction of relevant documents does not warrant an adverse inference except when the circumstances of the destruction or loss provide a basis for finding bad faith or willfulness. McIntyre v. Peters, 460 F.Supp. 2d 125, 138 (D.D.C. 2006), citing Coleman v. Casey, 1986 WL 11744 at *5 (D.D.C. June 19, 1986)(quoting Valentino v. United States Postal Service, 674 F.2d 56, 73 n.31 (D.C. Cir. 1982); see also Jinks-Umstead v. England, 2005 WL 3312947 *3 (D.D.C. 2005), citing Thompson v. U.S. Dep't of Housing & Urban Dev., 219 F.R.D. 93, 100-01 (D. Md 2003).

In Friends for All Children v. Lockheed Aircraft Corporation, 587 F.Supp. 180, 208-209 (D.D.C. 1984), modified at 593 F.Supp. 388 (1984), the District Court observed that under applicable circuit precedent that in order to justify an adverse inference the plaintiff must demonstrate ". . . evil intent, bad faith or willfulness on the part of Lockheed in the destruction of evidence sufficient to support a reasonable inference that the missing evidence was detrimental to Lockheed's case." Id. (internal citations omitted).  The plaintiff in the instant case cannot satisfy this burden.

Although the cases relied on by plaintiff in her pretrial statement stand for the proposition that a trial court may permit an adverse inference instruction where there is no evidence of intentional destruction of evidence or bad faith, they do not support an adverse inference under the circumstances presented here or under the law in this jurisdiction.  In Reilly v. Natwest Markets Group, Inc., 181 F.3d 253 (2nd Cir. 1999), a Second Circuit case cited by plaintiff, the Court held that an adverse inference is permitted even where there is no finding of bad faith or

5

intentional misconduct in searching for and preserving files. Id. at 267. The Second Circuit uses a case by case approach rather than a per se rule. Id. The Ninth Circuit apparently permits an adverse inference in response to the spoliation or destruction of evidence with "potential relevance to the litigation." Glover v. The BIC Corporation, 6 F.3d 1318 (9th Cir. 1993), citing Akiona v. United States, 938 F.2d 158 (9th Cir. 1991). In contrast to the Second and Ninth Circuits, the District of Columbia Court of Appeals in Williams v. Washington Hospital Center, 601 A.2d 28, 32 (D.C. 1991), a case cited by plaintiff, held that an adverse inference instruction should have been given where the object was lost after litigation had commenced, after it was used during the deposition process, and after the parties agreed the defendant would maintain custody of it during trial. Moreover, the Chairman of the Department of Ophthalmology at the defendant hospital took the object and tested it despite specific instructions by counsel not to do so. The circumstances presented in Williams are starkly different to those in the present case. See also Battochi v. Washington Hospital Center, 581 A.2d 759 (an adverse inference is not warranted where conduct does not rise to the level of reckless disregard for relevant evidence).

    The holdings in Reilly and Glover are not the law in this jurisdiction and do not appear to be the prevailing view in most other jurisdictions which require a showing that evidence was intentionally destroyed, willfully suppressed, or other evidence of bad faith or gross negligence in dealing with the evidence before an adverse inference is imposed as a sanction. See e.g. Alexander v. National Farmers Organization, 687 F.2d 1173, 1205-06 (8th Cir. 1982)(finding party engaged in deliberate pattern of shuffling and hiding documents to homes and warehouses to avoid discovery and ordered destruction of documents); Carlucci v. Piper Aircraft, 102 F.R.D. 472, 485 (S.D. Fla 1984), aff'd in part, rev'd in part, 775 F.2d 1440 (11th Cir. 1985) (defendant "utterly" failed to implement retention policy and engaged in practice of destroying documents

with intention of avoiding production in lawsuits) ; S.C. Johnson & Son v. Louisville v. Nashville Railroad Co., 695 F.2d 253, 258 (7th Cir. 1982)("The crucial element is not that the evidence was destroyed, but rather the reason for the destruction.") ; Nation-Wide Check v. Forest Hills Distributors, 692 F.2d 214, 219 (1st Cir. 1982)("conscious abandonment" of useful evidence is an indication of bad faith); Eaton Corp v. Appliance Valves Corp., 790 F.2d 874, 878 (Fed. Cir. 1986) (once both "evidence destruction and bad faith" are demonstrated court may infer the evidence unfavorable to the party destroying it).

  Here, there is no evidence that the defendant deliberately or willfully destroyed evidence, acted in bad faith, or was grossly indifferent to preserving relevant evidence.  On the contrary, the evidence discloses that at least a year prior to defendant's knowledge of plaintiff's FTCA claim, a flood caused significant damage and destruction to records in BEP's Electric Shop, including the elevator log books and inspection records relevant to this case.[2]   Mr. Popp, the Electric Shop supervisor and custodian of the records, did not become aware of any potential litigation until after plaintiff's administrative claim was filed.  It was not until an investigation of the plaintiff's claim began that Mr. Popp discovered that relevant records were inadvertently destroyed when the Electric Shop was flooded a year before (Popp Affidavit, ¶ 3).  It is clear that at the time the water damage occurred, the defendant was unaware of any claim or potential litigation by plaintiff. See e.g. Moore v. Department of Treasury, 2007 WL 949779*5 (D.D.C. 2007).

  As noted above, the circumstances presented here differ substantially from those circumstances where an adverse inference has been permitted.  The records in question were

---

[2] The flood and resulting water damage occurred in September 2002, prior to plaintiff's September 2003 administrative FTCA claim.

destroyed by an unforeseen event prior to notice of plaintiff's claim.  There is no evidence of malicious intent, willfulness or reckless disregard for preserving evidence.  And even if the defendant had known about plaintiff's claim or potential claim prior to the September 2002 flood, the evidence would not support an adverse inference.  A significant flood on the fourth floor such that it would virtually destroy the interior of the Electric Shop and its contents is simply an unforeseen and unfortunate event that involves no culpability.  Moreover, the remaining undamaged records which were relevant to plaintiff's claim were removed from the Electric Shop and put under lock and key in the Office of Security once an investigation of plaintiff's claim began.   It is important to note that the log books and inspection records were not the only records destroyed by the flood.  Emergency generator records, power supply test records, attendance sheets, equipment specifications and maintenance manuals, as well as computers and printers, were destroyed (Popp Affidavit, ¶ 3).

Finally, good faith efforts to preserve the available evidence were taken.  During the investigation of the FTCA claim, the investigators took possession of all of the remaining original log books and maintenance records. These items have remained locked in a safe within BEP's office of security since that time.  Appropriate precautions were taken to safeguard the remaining relevant records and documents.  Accordingly, plaintiff's request for an adverse inference should be denied.

To the extent plaintiff may seek an adverse instruction due to a delay in providing one loose leaf binder covering the evening and midnight shifts from August 15, 2000 to October 16, 2001, and the day and evening shifts from October 16, 2001 to December 6, 2001, the circumstances do not warrant an adverse inference sanction.  All counsel were aware that there

were missing records for the critical time period, which occurred during the day shift.[3] The failure to provide the volume containing the notations for the evening and midnight shifts was not done with the intent to withhold relevant information, but was due to a mistake in collating and forwarding the binders on the part of counsel. A review of that volume fails to demonstrate or support an inference that it was withheld because of any harmful information to the defense rather than inadvertence.

Defense counsel did not act in bad faith. The error was inadvertent. The circumstances presented do not justify extreme sanctions. Bonds v. District of Columbia, 93 F.3d 801, 807-09 (D.C. Cir. 1996) (extreme discovery sanctions reserved for flagrant misconduct). This has not been the kind of acrimonious "Rambo" litigation that has warranted sanctions as in other cases. Cf. Assassination Archives & Research Center v. C.I.A., 48 F. Supp. 2d 1, 10 (D.D.C. 1999). For example, on multiple occasions the parties mutually agreed upon deposition dates or have consented to each other's requests on various motions relating to discovery. The depositions in this case also proceeded smoothly with no attempted obstruction by either party. Defense counsel promptly scanned and provided plaintiff's counsel, at his request, with electronic copies of medical records she obtained. Defense counsel provided plaintiff's counsel with electronic copies of deposition transcripts. This contrasts dramatically with cases in which the Courts felt a need to impose sanctions for a variety of misconduct. For example, in Jankins v. TDC Management Corp., Inc., 131 F.R.D. 629, 630 (D.D.C. 1989), before imposing sanctions, the Court found the discovery conduct "contumacious" and numerous court orders to produce had been ignored, with an imminent trial date. See also, Shepherd v. American Broadcasting Companies, 62 F. 3d 1469, 1473 (D.C. Cir. 1995)(sanctions reversed in situation where court

---

[3] The accident occurred in the morning of October 9, 2001.

found counsel had deliberately falsified document, harassed a witness, and deceived the court) and  Bonds v. District of Columbia, 93 F.3d 801, 811 (D.C. Cir.1996) (sanctions reversed where discovery violation was not flagrant nor egregious).  Cf. Butler v. Donovan, 103 F.R.D. 456 (D.D.C. 1984) (sanctions appropriate only after ten month delay in case and two court orders).  Lateness in compliance, absent more, such as interference with the conduct of the case, did not justify sanctions in In re Paoli R.R. Yard PCB Litigation, 35 F 3d. 717, 792-793 (3rd Cir. 1994), cert. denied sub nom., General Electric Co. v. Ingram, 513 U.S. 1190 (1995).  Moreover, plaintiff cannot show any prejudice as a result of this delay.  Accordingly, an adverse inference or sanctions are not warranted.

## Conclusion

For the foregoing reasons, plaintiff's request for an adverse inference should be denied.

Respectfully submitted,

\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
 United States Attorney

\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

\_\_\_/s/_____
DIANE M. SULLIVAN, D.C. Bar #12765
Assistant United States Attorney
555 4TH St., N.W.,
Civil Division
Washington, D.C.  20530
(202) 514-7205


Of Counsel:
GAIL SERENCO
Office of General Counsel
Bureau of Printing and Engraving