```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
```

PEARLINE MARTIN                 :

    Plaintiff               :

v.                              :   Civil Action No. 05-1593 (RCL)

UNITED STATES OF AMERICA        :

    Defendant

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING ADVERSE INFERENCE

### I. MULTIPLE RECORDS ARE MISSING IN THIS CASE

The Defendant alleges that daily logs for the critical period of time from over a year before the October 9, 2001 elevator incident through exactly one week after the incident were destroyed by a flood. While the Defendant's motion focuses on missing daily logs, these are by no means the most critical records missing in this case.

In addition to daily logs, the Defendant maintains records of every incident in which anyone is injured at the Bureau of Engraving and Printing. The records are titled "Bureau of Engraving and Printing Safety and Occupation Health Division Incident/Injury Illness Investigation Form". No such document was ever produced in this case relative to the Plaintiff's injury and the Defendant does not claim any such document was destroyed in a flood. The Defendant's 30(b)(6) witness who testified at a

deposition regarding the documents produced by the Defendant, declined to provide any explanation for the missing records, claiming that to do so would be "speculation".

And there are even more documents missing than the daily logs and the missing Incident/Injury Illness Investigation Form. Although the Defendant has produced hundreds of pages of irrelevant documents in this case, it has produced only one single page from its own records concerning this incident. That single page is a document titled "Bureau of Engraving & Printing Supervisor's Accident/ Incident/ Near Miss Report" report listed as Plaintiff's Exhibit #1 in the Pretrial Statement. The Defendant is trying to exclude this document from trial.

Other than the one page, the Defendant has not produced a single investigative report, a single inspection record or a single repair record regarding the Plaintiff's injury or the elevator malfunction that caused her injury. The Defendant's "flood" excuse, which relates only to the daily logs, does not explain the absence of any documentation referring to this major incident, other than the one document which the Defendant wants to exclude.

Furthermore, there is reason to believe that other documents have been redacted to protect the Defendant. Attached hereto as Exhibit A is a report titled "Bureau of Engraving and Printing

Safety and Occupation Health Division Incident/Injury Illness Investigation Form". This document relates to an incident which occurred on September 24, 2001, two weeks before the Plaintiff's injury. The name of the employee, which Plaintiff's counsel has requested but not yet received, has been blacked out and the elevator number, which appears on nearly every other similar document, is conspicuously absent on this document.

The missing elevator number on the document is particularly suspicious since the document reflects a malfunction occurring one week before the Plaintiff's injury. The malfunction, which included "jerking" and resulted in injury to the operator, appears to be a milder version of the same malfunction which injured the Plaintiff. The document indicates that the malfunction, which occurred two weeks <u>before</u> the Plaintiff's injury, was not investigated until November 1, 2001, three weeks <u>after</u> the Plaintiff's injury. The recommendation on the document states: "Repair the elevator".

II. **<u>AN ADVERSE INFERENCE IS WARRANTED</u>**

Plaintiff's counsel would like to emphasize that in no way does he suggest any impropriety whatsoever on the part of defense counsel in this case, who has acted honorably and with the utmost integrity during this litigation. The records in this case, however, have been available to, and/or in the custody of many

-3-

people, including some very partisan investigators, who as the Court may see at trial, were extremely zealous in their mission to win this litigation.

The fact that hundreds of pages of documents were produced which contained only one solitary page dealing with this dramatic incident which injured and ended the career of a longtime employee, suggests that some impropriety has occurred somewhere along the line. It is further noteworthy that of all the hundreds of pages of records produced, the records allegedly destroyed by a flood happen to relate to the most critical period of time relative to the Plaintiff's case: from the year before the incident through exactly one week after the incident.

The Defendant cites federal trial Court decisions as well as D.C. Superior Court decisions to support its contention that an adverse inference is not appropriate in this case. The most recent appellate Court decision from the D.C. Superior Court addressed by the Defendant is the case of *Williams v. Washington Hospital Center*, 601 A.2d 28, 32 (D.C. 1991).

In the *Williams* case, the trial Court had declined to give an adverse inference instruction where the Defendant had failed to preserve a critical piece of evidence. The jury returned a Defendant's verdict. The Court of Appeals enunciated the following standard regarding adverse inferences:

> [T]his jurisdiction accepts the rule that a fact-finder may be permitted to draw an adverse inference from the failure of a party to preserve evidence within his exclusive control, we held that in certain situations the trial court is required to give the instruction.... "Upon a finding of gross indifference to or reckless disregard for the relevance of the evidence to a possible claim, the trial court must submit the issue of lost evidence to the trier of fact with corresponding instructions allowing an adverse inference." .... Where the negligence is not intentional or reckless, the court is accorded discretion in determining whether to give an adverse inference instruction and we will not disturb its decision absent an abuse of that discretion.

*Williams v. Washington Hospital Center*, 601 A.2d 28, 32 (D.C. 1991)(quoting in part from *Battocchi v. Washington Hosp. Center*, 581 A.2d 759 (D.C. 1990).

Even with the broad "abuse of discretion" standard, the Court of Appeals in *Williams* reversed the Defendant's verdict, finding that the trial Court abused its discretion in failing to give the adverse inference instruction. The Williams case further holds, contrary to the Defendant's assertion, that even in the absence of intentional misconduct or reckless disregard, if a Defendant fails to preserve sufficiently important evidence, an adverse inference is warranted at the discretion of the trial judge.

The most recent appellate ruling from this federal circuit to address the issue was in the context of a local Court tort

cause of action for spoliation of evidence. In *Holmes v. Rent-A-Car*, 336 U.S. App. D.C. 359, 180 F.3d 294 (D.C.Cir. 1999) the Court held that "negligent or reckless spoliation of evidence is an independent and actionable tort in the District of Columbia." The instant case is a Federal Tort Claims Act lawsuit in which the Defendant is liable "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". 28 U.S.C. §§ 1346(b). Since, in the District of Columbia, spoliation of evidence is treated very seriously, in tort as well as evidence law, Plaintiff submits that the pattern of missing evidence in this case militates in favor of an adverse inference at the very least.

   WHEREFORE, Plaintiff respectfully requests that the "Defendant's Motion in Limine to Preclude an Adverse Inference at Trial" be denied.

                    INTRATER LAW OFFICE


            By:  /s/  Neil Intrater
                 ─────────────────────────────
                 Neil Intrater - #362459
                 2310 Evans Drive
                 Silver Spring, Maryland 20902
                 301-754-0378
                 Intrater@comcast.net
                 Attorney for Plaintiff

BUREAU OF ENGRAVING AND PRINTING
SAFETY AND OCCUPATIONAL HEALTH DIVISION
INCIDENT (INJURY/ILLNESS) INVESTIGATION FORM

## EMPLOYEE PERSONAL INFORMATION

| Field | Value |
|---|---|
| NAME (LAST, FIRST, MI) | [redacted] |
| FACILITY | DC |
| ASSOC. DIRECTOR | OPERATIONS |
| OCCUPATION | CONTROLLER (CURRENCY) |
| OFFICE | CURRENCY PRODUCTION |
| GENDER (M/F) | FEMALE |
| DIVISION | CURRENCY PRINTING |
| SUPERVISOR | ROBERT SMITH |
| COST CENTER | 31.1020 |

## INCIDENT (INJURY/ILLNESS) INFORMATION

| Field | Value |
|---|---|
| DATE OF INJURY/ILLNESS | 9/24/2001 |
| TIME | 6:30 |
| SHIFT | MIDNIGHT |
| DATE OF NOTICE | 9/25/2001 |
| BEP LOCATION | ELEVATOR MAIN |

### INJURY/ILLNESS CLASSIFICATIONS

| | LOST TIME CASE | MEDICAL ONLY CASE | FIRST AID | FATALITY |
|---|---|---|---|---|
| INJURY | | | 1 | |
| ILLNESS | | | | |
| COP DAYS | | | | |

### INJURY/ILLNESS INFORMATION

| Field | Value |
|---|---|
| BODY PART | HAND |
| CAUSE | STRUCK AGAINST |
| NATURE OF INJURY OR ILLNESS | BRUISE/CONTUSION/ABRASION |
| SOURCE | ELEVATOR |
| HUMAN OR SAFETY FACTORS | DEFECTIVE/UNSAFE EQUIPMENT |

### DESCRIPTION OF HOW AND WHY THE INJURY/ILLNESS OCCURRED (CAUSE)

WHILE RIDING ON AN ELEVATOR IN THE MAIN BUILDING, IT BEGAN TO MALFUNCTION BY JERKING AND IDLING. IN THE PROCESS OF TRYING TO SUPPORT HERSELF, HER LEFT HAND STRUCK AGAINST THE ELEVATOR'S RAILING CAUSING SOME PAIN.

### DESCRIPTION OF TYPE OF INJURY/ILLNESS (NATURE)

BRUISE ON OUTER LEFT HAND.

### RECOMMENDATION OF HOW TO PREVENT A SIMILAR INJURY/ILLNESS

REPAIR THE ELEVATOR.

NAME OF INVESTIGATOR: ROBERTO NARANJO   DATE OF INVESTIGATION: Thursday, November 01, 2001

EXHIBIT A